# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JACKIE STOCKSTILL,

              Plaintiff,

      v.

FRESNO DEPARTMENT OF SOCIAL
SERVICES et al.,

              Defendants.

CASE NO. 1:19-cv-00889-AWI-SKO

**ORDER DISMISSING STOCKSTILL'S
CLAIMS FOR LACK OF SUBJECT-
MATTER JURISDICTION**

(Doc. Nos. 23, 28, 30, 33, 35, 37, 40, 44,
47, 56, 59, 65)

# I.   Introduction

This lawsuit is brought by a foster mother — Plaintiff Jackie Stockstill, who is appearing pro se — against several public and private actors who allegedly retaliated against Stockstill because Stockstill complained to her daughter's school district that her daughter's school nurse failed to properly treat the daughter's infection.  The public and private actors that allegedly retaliated against Stockstill include the following defendants: first, the two school districts that Stockstill's children attended, Fresno Unified School District and Central Unified School District; second, the local public entity that administered the foster care program that Stockstill and her children participated in, Fresno County Department of Social Services; third, the local public entity that administered Stockstill's "Section 8" housing, Fresno Housing Authority; fourth, Stockstill's former landlord, Hardev Singh Sidhu;[1] fifth, the public health plan that Stockstill and her children participated in, CalViva Health;[2] sixth, the health care providers who denied medical treatment to Stockstill's children, Baz Allergy Asthma & Sinus Center, Dr. Ajit Singh, and Family

---

[1] Stockstill's complaint refers to Hardev Sidhu as "Sidhu Hardev Singh."  <u>See</u> Doc. No. 10.  However, in his motion, Hardev Sidhu presents himself as "Hardev Singh Sidhu."  <u>See</u> Doc. No. 47-1.  Therefore, the Court's references in this order to "Hardev Sidhu" are synonymous with the complaint's references to "Sidhu Hardev Singh."

[2] In CalViva Health's motion, CalViva Health states that its full name is "Fresno-Kings-Madera Regional Health Authority," and "CalViva Health" is its "dba" moniker.

HealthCare Network;[3] and seventh, the woman who told Stockstill that Stockstill's case against Central Unified School District was worth $100,000, Alecia Eugene-Chasten.

Now before the Court are several motions from several defendants attacking Stockstill's claims and complaint. Specifically, the motions now before the Court are as follows:

- **Rule 12(b)(1)**: Motions to dismiss Stockstill's claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), which were filed by Dr. Singh; CalViva Health ("CalViva"); Fresno Housing Authority; Baz Allergy Ashma & Sinus Center ("Baz Allergy"); Fresno Unified School District ("Fresno Unified"); Fresno County Department of Social Services ("Fresno County DSS"); Hardev Sidhu; Central Unified School District ("Central Unified"); and Family HealthCare Network.[4] See Doc. Nos. 23, 28-1, 30, 36, 40-1, 44-1, 47-1, 56, 65-1.

- **Rule 8(a)(2) and Rule 10(b)**: Motions to dismiss Stockstill's claims for failure to comply with Rule 8(a)(2) and Rule 10(b), which were filed by Dr. Singh; Baz Allergy; Hardev Sidhu; and Central Unified. See Doc. Nos. 23, 36, 47-1, 56.

- **Rule 12(b)(6)**: Motions to dismiss Stockstill's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), which were filed by Dr. Singh; CalViva; Fresno Housing Authority; Baz Allergy; Fresno County DSS; Hardev Sidhu; Central Unified; and Family HealthCare Network. See Doc. Nos. 23, 28-1, 30, 44-1, 47-1, 56, 65-1.

- **Rule 12(b)(4) and Rule 12(b)(5)**: Motions to dismiss Stockstill's claims for insufficient process and insufficient service of process pursuant to Rule 12(b)(4)

---

[3] Stockstill's complaint refers to Family HealthCare Network as "Family Health Care" and "Children Health Care." See Doc. No. 10. However, in its motion to dismiss, Family HealthCare Network represents to the Court that its proper name is "Family HealthCare Network." See Doc. No. 65-1. Therefore, the Court's references in this order to "Family HealthCare Network" are synonymous with the complaint's references to "Family Health Care" and "Children Health Care."

[4] In addition to the motions that are now before the Court, Alecia Eugene-Chasten filed an answer to Stockstill's complaint, and in the answer Eugene-Chasten raised the defense that Stockstill's claims lacked a federal question. See Doc. No. 20. Further, as for Family HealthCare Network's motion to dismiss, see Doc. No. 65, that motion is currently scheduled for hearing on April 6, 2020, but the Court will vacate that hearing and adjudicate the motion through this order because the arguments in the motion (i.e., Rule 12(b)(1), Rule 12(b)(6), and Rule 12(e) arguments) are nearly identical to the arguments raised by the other defendants' motions.

and Rule 12(b)(5), which were filed by Fresno Unified and Fresno County DSS. See Doc. Nos. 40-1, 44-1.

- **Rule 12(e)**: Motions for a more definite statement of Stockstill's claims pursuant to Rule 12(e), which were filed by Dr. Singh; Baz Allergy; Central Unified; and Family HealthCare Network. See Doc. Nos. 23, 36, 56, 65-1.

- **Rule 12(f)**: Motion to strike redundant, immaterial, impertinent, and scandalous matter from Stockstill's complaint pursuant to Rule 12(f), which was filed by Dr. Singh. See Doc. No. 23.

## II. Facts

### A. Factual allegations from Stockstill's complaint.

#### 1. Preface from the Court.

The following facts are taken from the allegations in Stockstill's complaint. See Doc. No. 10 (Stockstill's first amended complaint). At the outset, the Court notes that much of the complaint's allegations and factual narrative are unintelligible and incoherent. As a result, many of the following facts presented in this subsection are also unintelligible and incoherent, despite the Court's earnest attempt at distilling, synthesizing, and summarizing the complaint's factual allegations.

#### 2. Jackie Stockstill.

Jackie Stockstill is "a stay-at-home mom" whose daughter passed away. Doc. No. 10. The deceased daughter "left behind one child" to Stockstill. Id. Stockstill is the guardian of a daughter, Emontey. Stockstill is the foster mother to "two foster boys," Joe and Lupe. Id. Stockstill has "taken care of" a "a list of kids" "for long-term and short-term." Id.

#### 3. Central Unified School District and Fresno Unified School District.

Stockstill's daughter, Emontey, contracted staphylococcus aureus ("MRSA," which is the acronym for "methicillin-resistant staphylococcus aureus") while attending McKinley Elementary School. McKinley Elementary School is part of Central Unified. McKinley Elementary School

did not provide Emontey with "proper medical treatment" for MRSA. <u>Id.</u> Emontey's infection was not "reported to the state" by McKinley Elementary School or Clovis Unified. <u>Id.</u>

An "incident report should have been made between the school and [Fresno County DSS]." <u>Id.</u> Emontey was "taken to the ER at Community Medical Center, where she was admitted into the ICU." <u>Id.</u> Stockstill lodged "several complaints" with Central Unified about the "school nurse" "fail[ing] to give [Emontey] proper medical treatment," a failure that caused "a lot of healthy relationships to unfold due to retaliation and cover-up." <u>Id.</u>

"[M]ore than one of [Stockstill's] children are experiencing some type of illness relatable to the illness that [Emontey] suffers from." <u>Id.</u> "Some of the other children are being treated with the same type of medication [that Emontey] is on." <u>Id.</u> "One of the children is experiencing allergic reactions first started off very slow now is starting to be real progressive and could have all ready been treated due to retaliation from the [director of Fresno County DSS,] Delfino E. Neira[,] that over the medical department tampering with treatment delays in services." <u>Id.</u>

The "County of Fresno Department of Public Health Communicable Disease Monthly Report" "have no report" of MRSA. <u>Id.</u> "5 years annual average 0." <u>Id.</u> During the 2016-2017 school year, "it[] show[s] Stapylococcus Aureus-Methhicillin Resistent (MSRA)." On December 6, 2016, Lisa Reyna "left a letter our agency received a referral with allegations of abuse and/or neglect regarding" Stockstill's children. <u>Id.</u> The allegations were false and came from someone at McKinley Elementary School "because a message was left on [Stockstill's] voice mail intended for the school saying she is a worker from the department of social services her name is How she name Amanda who work in the after school program and name [Stockstill's] granddaughter Alayiah's Greely and more than one call was made." <u>Id.</u>

Stockstill's children were transferred from school/s in Central Unified to school/s in Fresno Unified. "Vang Poa Elementary School is the last school [a]ttended by [Stockstill's] children." <u>Id.</u> When Stockstill applied for her children to attend the school, she noted that one of the children, Lupe, had hearing loss. Lupe was put "on a 504 plan." <u>Id.</u> The previous schools that Lupe attended had "made" a "plan." <u>Id.</u> "A decoration was also done on the previous school[,] Jefferson Elementary School[,] under the same superintendent and district as Van[g] Poa

Elementary." Id. The children attended Vang Poa Elementary School for about five weeks, during which time Lupe had no behavioral issues. One day during those five weeks, September 5, 2018, Lupe "received student of the day." Id.

On September 13, 2018, Stockstill received a "message from Vice Principal Julie Johnson." Id. Stockstill "returned the call the same day," and Johnson told Stockstill that her foster son, Joe, had "been harassing students and [had] not been very nice." Id. Johnson told Stockstill that Joe "called the girls dumb[,] stupid[,] and ugly." Id. "What [Stockstill] was told on the phone was not on the narrative description." Id. The "narrative description" stated that "this morning, two girls were very upset and asked to speak with the principal," and "[y]esterday at lunch Joe slapped one of the girls on the butt and then 'corndogged' her by putting his knee into her buttocks," and "[t]here were several witnesses," and "[t]hen [Joe] went to [another] girl with an open hand, hit her on the left breast and called her a 'bitch.'" Id. "On the same day they tried to suspend Lupe for saying the word fruity." Id. Stockstill "told them Lupe [was] on a 504 plan," and "they stated that they didn't know that." Id.

Stockstill "called a meeting with both VP [Johnson] and Principal Ms. Lee." Id. Stockstill "came to the meeting with both boys[,] Joe and Lupe." Id. Stockstill, Johnson, and Lee "talked all together" and "then [with] the boys one on one." Id. Stockstill "told . . . Lee that what [Stockstill] was told on [the] phone is not what [was] on the narrative description at that time." Id. Johnson "said she didn't tell [Stockstill] those thing on narrative almost in tear." Id. Lee "carr[ied] on like . . . Johnson didn't say a word." Id. "Joe also said in the meet[ing] why nothing was done when kids was going saying[,] [']I'm gay[.']" Id. "Joe also told them he was in detention at time they said he did those thing to girls." Id. Stockstill "said with that being said[,] [she felt] it is not a safe and supportive place of learning." Id.

Vang Poa Elementary School "never send home a Student Suspension form for Lupe but put it on his transcripts." Stockstill had "a conversation over the phone about 504 plan." Id. Stockstill "then requested an independent study contract for all four of [her] children in writing." Id. Stockstill asked "for week packs." Id. Stockstill was "set . . . up [with week packs] for 15 days." Id. "[M]ade [Stockstill] wait the next time for work while in contract with the school send

me a first and second truancy on the same days." Id. "They refuse to give me work while [Stockstill and the school] resolve this matter." Id.

"A notarized acknowledgement was done on Van[g] Poa Elementary [on September 16, 2018, and] on Jefferson Elementary School on [September 15, 2018]." Id.

Stockstill's "kids had no attendance issues before this matter occur." Id. "Five school later the retaliation continue," and Stockstill refuses "to put [her] kids in school until this matter is resolved." Id. Stockstill's "kids are still fight illnesses that was contracted [from] school." Id. The children are left untreated.

The schools and school districts that Stockstill's children attended retaliated against Stockstill and her children. Stockstill's children cannot attend school and receive a proper education "without some unGodley acts being made from the school district." Id.

Stockstill seeks $750,000 in damages from Central Unified for "[a]llegations of 'Unfounded and Reckless' Child Abuse and Neglect Reporting." Id. "[T]hese vicious attacks have caused [Stockstill's] family Retaliation, Libel, Slander[,] Intentional infliction of emotional distress, Administrators / staff making knowingly false report of child abuse, Violation of [Stockstill's] Civil Right, Malicious prosecution, and Abuse of process." Id.

Stockstill seeks $76,000 dollars in damages from Fresno Unified for "continuing the retaliation[,] refusing to provide a free public education, stopping the education of my daughter while fighting [an] infectious disease, . . . denying [Stockstill's children] home study[,] never enrolling her into school[,] also calling CPS for not a legit reason," and "[a]lso the unfair treatment of [Stockstill's foster boys[,] also involving DSS[,] causing more trauma for the unfair treatment from the tricks and schemes from the [Fresno County DSS] and the school district." Id.

### *4.* *Fresno County Department of Social Services.*

Stockstill was in good standing with Fresno County DSS for a few years. But then Stockstill "had issues after issues with [Fresno County DSS]." Id. Stockstill is the "legal guardian of [her] foster boys." Id. Stockstill tried to adopt her "foster boy," but the foster boy's biological mother "made false reports," and Cory Pope, a supervisor at Fresno County DSS, lied to the Superior Court of California, County of Fresno, which required Stockstill to request to change the

6

"court order" through a "JV-180 more than two times," but the court did not respond to Stockstill's request, and "CPS [is] not following policy and procedures." Id.

A "decoration was done on 1/31/18" to the Fresno County DSS. Id. Fresno County DSS had fourteen days "to respond to [the] decoration or provide documentation that [Stockstill] was out of compliance." Id. Fresno County DSS never responded.

Stockstill had a foster care license for Tailyiah Jackson. Stockstill applied to Fresno County DSS for a "RFA license" for foster care of her "foster boys." Id. Agents of Fresno County DSS, Cory Pope and Jessica Carrillo, knew Stockstill's "whereabouts [but] sent the denial letter for [the] RFA License . . . to the wrong address." Id. Stockstill found out about this later.

Cory Pope eventually came to Stockstill's correct residence. Pope "left a text message" with Stockstill that stated, "I stopped by your house on George since you are not returning my phone or test messages," and "it will be helpful to you and the kids to meet at [Pope's] office." Id. This caused "more trauma" to Stockstill because it was "harassing" Stockstill with "unnecessary contacts when [Stockstill] already had her six-month visit." Id. Stockstill was only supposed to have contact from Fresno County DSS once every six months, but Stockstill received "overwhelming calls" to her "place of residence." Id.

On May 31, 2019, Stockstill met "with the children['s] case worker[,] Nicole Brook[,] as in the past a Case Plan Update is done." Id. "No documents [were] given" to Stockstill." Id. "[W]hile [Brook was] talking to the kids and asking them question[s,] she tell the boys to said what they want to said and not what [Stockstill] want them to said." Id.

"One of the children is experiencing allergic reactions first started off very slow now is starting to be real progressive and could have all ready been treated due to retaliation from [Fresno County DSS and] Delfino E. Neira that over the medical department tampering with treatment delays in services." Id. "Interfering with the doctor visits and treatments at the facilities [Stockstill's] children go to." Id. "They continues to put [Stockstill's children's] health at risk." Id. "Changing [Stockstill's] medical plans without [Stockstill's] knowledge[,] switching [Stockstill's] kids['] doctor[,] making it hard to receive [treatment,] also messing with the medical billing as well like [Stockstill] don't have coverage." Id. "They continues to put my children at

risk." Id. "Chan[g]ing my medical plans without my knowledge switching my kids doctor making it hard to receive treatment also messing with the medical billing as well like I don't have coverage." Id.

Stockstill seeks $750,000 in damages from Fresno County DSS for "[ta]mpering with medical records, medical treatment, medical billing, cover-ups, lying in a court of law, Intentional infliction of emotional distress, Malicious prosecution, . . . Abuse of process, stopping [Stockstill] from using any government-funded programs, Stopping [Stockstill] from caring for other children's, interfering with the education of the children, [$]250,000 for the pain and suffering." Id.

### 5. *Fresno Housing Authority and Hardev Sidhu.*

Stockstill had been "on Section 8" for twenty years with "no issues at all." Id. Stockstill just received an "upgrade from Section 8" for "a 4 bedroom voucher" and Stockstill "had already had her year or 6 mouth inspection." Id. Stockstill was "in compliance with Section 8." Then an employee from Fresno County DSS, Farrin Scheidt, illegally entered the residence at "4725 W University Ave Fresno." Id. Scheidt opened the side gate and walked "around the facility" and looked into windows. Id. Scheidt left "no identification that he was on the premises." Shortly after Scheidt was at the residence, Stockstill received a letter "out of nowhere" from Section 8 to terminate her "services." Id. "Scheidt also was involved trying to get [another] county involved for something [Stockstill] was already investigated for and was denied." Id. A "decoration was done on 10/24/18," but "[t]hey" made no response. Id. Section 8 "stop[ed]" Stockstill from "receiving housing." Id.

Hardev Sidhu was Stockstill's landlord. Stockstill had "great relationship" with Sidhu for four years. Id. Sidhu told Stockstill that "he will give [Stockstill] a good reference" and "no money owed." Id. But then Sidhu "said [Stockstill] damaged his property that he provided pictures." Id. "[W]hen [Stockstill] asked the landlord about what they said he told [Stockstill] to have them show [Stockstill] the pictures." Id. "[W]hen [Stockstill] asked section 8 to show [Stockstill] pictures[,] nothing was shown." Id. Sidhu kept Stockstill's entire security deposit and lied about "money owned for repair." Id. "But [Stockstill is] the one that moved out because no

[repairs] was being done and for health of [Stockstill's] daughter due to mold build-up, roaches." Id. Sidhu told Stockstill that Section 8 "owned him money." Id. "The date [Stockstill] moved out do not match the date on the [S]ection 8 voucher." Id. "Paying [Sidhu] an extra month when he the one in the wrong." Id.

A supervisor from Fresno Housing Authority, Stephanie, told Stockstill on May 10, 2018, that if Stockstill "bring in a letter" from Emontey's doctor saying that Emontey "need[s] to move out of Fresno because of air quality," then Stephanie would "re[]instate" Stockstill's "transfer." Id. On May 11, 2018, Stephanie said that Stockstill owed Sidhu $4,000. Stockstill talked to Butterfly Grove Apartments, which said that Sidhu told them that Stockstill owed $500. Neither Section 8 nor Sidhu gave Stockstill any documentation showing that Stockstill owed anything. Id. Stockstill never heard from Stephanie after May 11, 2018, until Stockstill served "them a decoration." Id.

Based on the foregoing facts, Stockstill seeks $16,000 in damages from Fresno Housing Authority and $3,000 in damages from Sidhu.

### 6. *CalViva Health.*

CalViva is a public health care plan. Stockstill and her children were "on" CalViva. Id. Stockstill "never applied for Covered California."

On January 10, 2019, "CalViva Health was advised by the [Department of Managed Health, or "DMHC"] . . . that the outcome of the [independent medical review] is determination that the requested services are medically necessary for treatment of Emontey['s] condition." Id. On January 15, 2019, DMHC "submitted appeal for coverage of Allergy Shots to CalViva Health." Id. "The case was sent for an Independent Medical Review (IMR)." Id. On January 15, 2019, "CalViva Health now had to overturned its denial and issued an authorization for the allergy shots with Baz [A]llergy and Asthma & Sinus Clinic (one a week for 52 weeks)." Id. "The authorization is effective from January 9,2019, through January 15, 2020." Id. The authorization states that "you may contact the provider to arrange an appointment." Id. DMHC provided Stockstill with a letter that stated, "Your health care provider was notified of this authorization on January 15, 2019." Id. "Also [o]n December 15,2017, was already declared medically necessary

from DMHC for the same thing." Id. "Also on March 26, 2018[,] had [another] complaint regarding quality of service provided to my daughter for improper denial delay in services from CalViva Health." Id. Stockstill filed "more than one grievance with CalViva Health for several denials." Id.

Stockstill seeks $800,000 dollars in damages from CalViva for "[i]mproper delays, denial, stopping treatment[,] also the Department of Managed Health Care for the second time overturned decision of Health Plan Calviva Health January 10, 2019 they have already declared medically necessary approved for 52 weeks," and "Stockstill's daughter is still not receiving treatment," and Stockstill "had to file several grievance after DMHC had already approved Allergy Shots while in treatment [and Stockstill's] daughter showed she was benefit from treatment," and "Calviva Health stop treatment that was already approved causing [Stockstill's] daughter's health to decline." Id.

### *7.* *Dr. Ajit Singh.*

Dr. Singh was the doctor for Stockstill's children. "[A]ll the kids had the same doctor Dr. Aj[it] Singh," who was Stockstill's children's "long time physician." Id. Stockstill "had a lot of trust in him." Id. Dr. Singh "was aware about the situation with the school." Id. Stockstill "tried to get [Dr. Singh] to test the kids for MRSA, [but] he started being real unprofessional after been my doctor for 12 years cover up was made have documentation to show." Id. Dr. Singh "refused to give treatment when he told [Stockstill] to video the kids sleeping and then he would run the test if [Stockstill] bring in video and it showed they had trouble breathing at night." Id. Stockstill did this but Dr. Singh still refused to give treatment, [and] also refused to give [Stockstill] medical records for all [Stockstill's] children's." Id. "This only started happening after the complaint was filed [by Stockstill] against the school about the infectious Disease that [Emontey] contracted from the school." Id.

"The same thing started to happen when switch physician went through several facilities was received care then it would stop all facilities and health plan involved Children's Health Center," which "turned in to Family Healthcare, Dr. Baz Allergy Center, Clinica Sierra Vista,

Family Allergy Asthma Clinic." Id. Stockstill has "documentation" for "CalViva Health, Anthem Blue Cross, Covered California." Id.

Stockstill seeks $900,000 dollars in damages from Dr. Singh for her "kids['] health that declining for not being treated and for the pain and suffering it caused." Id.

### 8. *Baz Allergy Asthma & Sinus Center.*

Stockstill's daughter, Emontey, was going to a Baz Allergy clinic for about two years and was referred there "by the hospitals." Id. Stockstill "called to arrange appointment," and the clinic "stop[ed] treatment" and "told [Stockstill] they no longer except CalViva after they are the one requested one a week injections." Id. The clinic "started denying services like the same as everyone else stated Falsifies, conceals, or covers up by trick, scheme [Stockstill's] innocent daughter still unable to receive treatment." Id. The clinic is "playing games with [Emontey's] life." Id. Stockstill knows the clinic "still [accepts] her health plan because [Stockstill] called anther facility and its stated on [their] website." Id. "Also on 11\6\18 Baz Allergy, Asthma & Sinus Center there is a letter" that states, "To Whom It May Concern: Patient, Emontey Epps is to be on injections for 5 years." Id. "Also [Stockstill has] [another] letter with her 3 [month] appointment stopped her healthcare services for no valid reason, knowing that [Stockstill] was waiting on authorization." Id.

Based on the foregoing facts, Stockstill seeks $50,000 in damages from Baz Allergy.

### 9. *Family Allergy Asthma Clinic.*

Stockstill was referred by Dr. John Moua to Family Allergy Asthma Clinic, located at "7105 N Chestnut Fresno CA 93720." Lupe and Emontey were referred to this clinic by two different doctors, and both Lupe and Emontey were visiting this clinic. "Lupe was able to receive[] treatment but not Emontey retaliation continue." Id. "Lupe was seen by anther health center called Elm Family Community Center 2740 S. Elm Avenue Fresno, CA 9306," and "was referred to anther clinic to see a dermatologist for second time at Clinic Sierra Vista" and "seen by Kalila D Banks." Id. Banks saw Lupe's rash, and Stockstill told Banks that "blood work was never done," and Banks ordered blood work." Id. "[L]gg levels came back in normal range that when Lupe was seen by Family allergy Asthma Clinic rash didn't come from allergy." Id.

Stockstill "told Kalila Banks about Emontey and that [Stockstill] think that all children are suffering from the same communicable disease that Emontey have." Id. Stockstill received a "call back from Kalila D Banks," and Banks "stated that its was more like true want I was saying because Lupe lgg was normal range but she still had him do other test at Family Allergy Asthma clinic." Id. Banks stated that "she contacted the Communicable Disease Department and Central Unifed School District talked to her one more time was waiting on a call from her never received a call back." Id. "DSS is also over Kalila Banks facility." Id.

### *10.* *Jeannette Munoz.*

Jeannette Munoz is the biological mother of one of Stockstill's foster children. Munoz "wrote a letter on [Stockstill's] behalf on Tue, May 9, 2017[,] saying she [has] witnessed [Stockstill] provide a nurturing, healthy, loving safe home for her boys," and Munoz also said that Stockstill "was a great support for them emotionally since in my care and she is beyond grateful for all [Stockstill has] done for her children." Id. On January 17, 2018, Munoz "turn around made a false report and said minor was sexually abused by his minor siblings and the caretaker of minor was aware of the situation." Id. Stockstill "was out of town with Jeannette at the time because the same day [Stockstill] left that when Farrin Scheidt's showed up when [Stockstill] was leaving in December so on the document its said when referral came into the CPS Hotline it was for guardian Jackie Stockstill and minor in her home, were a DIU Family 2nd referral was created." Id. "However, it was later discovered this was not true and referral was evaluated out onto this referral and the same allegations were addressed in that referral." Id. "Even though Farrin Scheidt's SW from DSS know its was not true he still contacted Riverside County CPS and spoke with Toya King who took down the reported." Id. "SW followed up with SCARs report and fax it to Riverside County CP on same day." Id.

On February 1, 2018, "SW Scheidt received an emergency response notice of referral disposition from Riverside County CPS." Id. "SW was notified the report SW made does not meet the state requirements for intervention." Id. "Also during Crisis investigation reported to Fresno Police Department." Id. "Knowing allegations wasn't true." Id.

### *11.*     *Alecia Eugene-Chasten.*

Eugene-Chasten told Stockstill that Stockstill's case against Central Unified was worth $100,000, but then Eugene-Chasten "did not turn in any of [Stockstill's] evidence for [Eugene-Chasten's] own personal gain." Id. Eugene-Chasten and Stockstill were "in a signed contract," and Eugene-Chasten "is more than qualified to finish the job." Id. This is "causing more emotional distress also the education of [Stockstill's] children to fail." Id.

Based on the foregoing facts, Stockstill seeks $100,000 in damages from Eugene-Chasten.

### *12.*     *Stockstill's other requested relief.*

Stockstill asks the Court to "put a stop to the retaliation of [her] family." Id. Stockstill says she needs "immediate assistance in the relocation so [she] and her family can receive proper medical treatment." Id. Stockstill wants "the school district involved to pay for a tutoring, a private school of her choice, laptops, any equipments needed to catch children up in their school work and for the Court to address all matters in Federal Court." Id. Stockstill was previously "treated unfairly in the Superior Court of California County of Fresno [Juvenile] Department Central Division." Id. Stockstill wants "to address change in visitation, school records, pay the correct amount for special need, issue a RFA license . . . and [d]eal no longer with Fresno County for foster care but deal with another county." Id.

### *13.*     *Complaint's statement of jurisdiction.*

In her complaint, Stockstill states that the basis for this Court's jurisdiction is "federal question," not "diversity of citizenship." Id. Stockstill states that the following federal laws are at issue to her claims:

- 28 U.S.C. § 4101, which is a law that defines "defamation" for purposes of a judicial proceeding wherein a domestic federal or state court is asked to recognize or enforce a foreign judgment for defamation.
- The Fair Housing Act of 1968, 42 U.S.C. §§ 3601 et seq.
- "Plain Language Act," which possibly is a reference to the Plain Writing Act of 2010, Pub. L. No. 111-274, 124 Stat. 2861.

- 18 U.S.C. 1001, which is a law that applies federal crimes of fraud and false statements.
- 38 U.S.C. § 7316, which is a law that applies to claims of malpractice or negligence of a health care employee of the Veterans Health Administration.
- 41 U.S.C. § 6503, which is a law that applies to breaches or violations of contracts made by agencies of the United States.
- Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 eq seq., which prohibits discrimination based upon disability.
- "Malicious prosecution and abuse of process Administrators / staff making a knowingly false report of child abuse in violation of penal sec 1117(a)," which is possibly a reference to the California Child Abuse and Neglect Reporting Act, Cal. Penal Code §§ 11164 <u>et seq.</u>
- "Intentional infliction of emotional distress."
- "Libel, Slander."
- "Negligent infliction of emotional distress."
- California Ralph Civil Rights Act of 1976, Cal. Civ. Code § 51.7.

## III. Discussion

**A.** **Subject-matter jurisdiction.**

    *1.*    *Defendants' arguments.*

The defendants argue that the Court lacks subject-matter jurisdiction over Stockstill's claims and, as a result, the claims should be dismissed pursuant to Rule 12(b)(1).  <u>See</u> Doc. Nos. 23, 28-1, 30, 36, 40-1, 44-1, 47-1, 56.  According to the defendants, the allegations in Stockstill's complaint — to the extent that they are intelligible — fail to plead a claim arising under federal law, even despite Stockstill's references in the complaint to several federal laws.

    *2.*    *Stockstill's arguments.*

Stockstill filed an opposition to Dr. Singh's motion and Baz Allergy's motion.  <u>See</u> Doc. Nos. 34, 51.  As to the other defendants' motions, Stockstill failed to timely file an opposition or

request for an extension of time to file an opposition.[5]  In her opposition to Dr. Singh's motion,

Stockstill's sole statement concerning subject-matter jurisdiction is as follows:

> 18 U.S 1001 stated in the claim stated in attachment 3 page 2 cover up was made. Statements or entries generally U.S.C, which generally prohibits knowingly and willfully making false or fraudulent statements, or concealing information, in any matter within the jurisdiction of the federal government of the U.S.

Doc. No. 34.  In her opposition to Baz Allergy's motion, Stockstill's entire statement concerning

subject-matter jurisdiction is as follows:

> On page 3 of 5 of the complaint a. Its states list the specific federal statutes, federal treaties and / or provisions if the Unites States Constitution on that are at issue in this case.  In this case 18 U.S.C. 1001 makes it a crime to: 1) falsifies, conceals, or covers up by any trick, scheme, or devise a material fact; this statue pertaining to all parties including Baz allergy Asthma & Sinus Center.  The motion to dismiss should not be granted on the grounds that the orders from Baz Allergy for treatment showed improvement from the shots your facility is aware of the patient need and knew that the shots [was] effective, knowing that her health would decline if treatment was stopped because you advocated how she would benefit from Weekly injections and ask for the approval.  When the DMHC over turned the first denial from CalViva health for shots your facility started the shots right away.  But the second time DMHC overturned denial for shot your facility new my family was wait for the authorization to started treatment .After DMHC approved the shot Baz Allergy started denying shots and treatment and making fraudulent statements about services. She was approved on 1/10/2019 for 52 weeks by DMHC and has not had one shot.  The retaliation played a big role in stopping treatment because the effort made on behalf of the facility in the beginning Was great this facility need to be held accountable for their actions my daughter health is still declining from the actions of Baz Allergy Asthma & Sinus Center.

Doc. No. 51.

### *3.* *Legal standard.*

The federal courts have limited jurisdiction and can only adjudicate cases that fall within

Article III of the Constitution and a congressional authorization enacted thereunder.  U.S. Const.

art. III; Hertz Corp. v. Friend, 559 U.S. 77, 82-83 (2010).  "It is presumed that a cause lies outside

this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).  Rule 8(a) expressly

states that the party invoking the court's jurisdiction must include in the pleading "a short and

---

[5] Local Rule 230(c) requires an opposition to be filed "not less than fourteen (14) days preceding the noticed (or continued) hearing date" for the motion. L.R. 230(c).  On October 17, 2019, Stockstill filed a request for a fifteen-day extension to respond to Fresno County DSS's motion.  See Doc. No. 59.  However, the hearing date for Fresno County DSS's motion was scheduled for October 21, 2019.  Accordingly, Stockstill's request for an extension of time was untimely and is denied.

plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support." Fed. R. Civ. P. 8(a). "Federal question" subject-matter jurisdiction derives from 28 U.S.C. § 1331, which states that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Rule 12(b)(1) allows for a motion to dismiss based on lack of subject-matter jurisdiction. See Fed. R. Civ. Pro. 12(b)(1). Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. See Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). When a defendant challenges jurisdiction facially, all material allegations in the complaint are assumed true, and the court determines whether the factual allegations are sufficient to invoke the court's subject-matter jurisdiction. See Leite, 392 F.3d at 362; Meyer, 373 F.3d at 1039.

A motion made under Rule 12(b)(1) should not "be confused with a motion [made] under Rule 12(b)(6) to dismiss for failure to state a claim for relief under federal or state law because the two are analytically different; as many courts have observed, the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) (citing cases). "But . . . the difference between the two motions is often difficult to discern." Id.

### *4.* *Discussion.*

The defendants have waged a facial attack on the Court's federal question subject-matter jurisdiction over Stockstill's claims.[6] In other words, the defendants contend that the allegations in the complaint, even if presumed to be true, fail to sufficiently plead that at least one of Stockstill's claims arises under federal law. Stockstill, on the other hand, contends that the

---

[6] As noted supra, Stockstill asserts that the Court has federal question subject-matter jurisdiction. Neither Stockstill nor the defendants suggest that the Court has diversity subject-matter jurisdiction over Stockstill's claims.

allegations in the complaint establish that the Court has federal question subject-matter jurisdiction because at issue to Stockstill's claims are several federal laws.

Even when construing Stockstill's complaint broadly and liberally — as is required by Rule 8(e), especially for a pro se litigant such as Stockstill, see Erickson v. Pardus, 551 U.S. 89, 94 (2007); Ortez v. Washington County, State of Oregon, 88 F.3d 804, 807 (9th Cir.1996) — the Court agrees with the defendants that Stockstill's complaint fails to sufficiently plead that at least one of Stockstill's claims arises under federal law.[7] Stockstill's references in the complaint to several federal laws do not, by themselves, sufficiently plead federal question subject-matter jurisdiction. To determine whether the pleader sufficiently pleaded subject-matter jurisdiction, as is required by Rule 8(a), the court may look holistically at the entire complaint, not just the complaint's jurisdictional statement. See In re Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 5 (1st Cir. 1999). "If the pleader alleges subject matter jurisdiction generally, but allegations in later portions of the complaint negate its existence, the district court should read the complaint as a whole and dismiss the action." Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) (citing cases). Further, "a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Williston Basin Interstate Pipeline Co., 524 F.3d 1090, 1094 (9th Cir. 2008) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)); see also Lanfear v. Home Depot, Inc., 536 F.3d 1217, 1221 (11th Cir. 2008) ("When a plaintiff makes a plausible argument that a federal statute creates his right to relief, the district court has subject-matter jurisdiction over that complaint.") (emphasis added).

Here the allegations in Stockstill's complaint do not sufficiently plead a claim arising under federal law, even despite Stockstill's references to several federal laws. To summarize, Stockstill's allegations — many of which are unintelligible — appear to tell the following story. Stockstill's daughter, Emontey, contracted an infection at McKinley Elementary School, and the

---

[7] Neither Stockstill nor the defendants suggest that the Court has diversity subject-matter jurisdiction over Stockstill's claims.

school nurse did not properly treat the infection. Stockstill's other children contracted the infection. Someone at the school alleged that Stockstill abused or neglected her children. After Stockstill transferred her children to Vang Poa Elementary School, administrators at the school falsely reported that Stockstill's son, Joe, misbehaved. Stockstill pulled her children out of school, and the school refused to provide Stockstill with home study "work" for the children. Doc. No. 10. The biological mother of one of Stockstill's foster children made a false report about Stockstill. Stockstill applied for a foster care license, but Fresno County DSS improperly denied the application and purposefully sent the denial letter to an incorrect address. Fresno County DSS interfered with Stockstill's children's medical treatment by changing Stockstill's medical plans, switching Stockstill's children's doctors, and "messing" with the medical billing. Id. Cory Pope of Fresno County DSS harassed Stockstill by texting and calling Stockstill and inspecting Stockstill's residence. The Fresno Housing Authority denied Stockstill's Section 8 benefits. Stockstill's landlord, Sidhu, falsely told Fresno Housing Authority that Stockstill damaged the rental residence and owed him rent. Fresno County DSS denied Stockstill's application for a foster care license. CalViva denied certain medical treatments for Stockstill's children. The Department of Managed Health reversed CalViva's denials. Dr. Singh and Baz Allergy refused to provide medical treatment to Stockstill's children and refused to provide medical records to Stockstill. Eugene-Chasten told Stockstill that Stockstill's case against Central Unified was worth $100,000, but then Eugene-Chasten "did not turn in any of [Stockstill's] evidence for [Eugene-Chasten's] own personal gain." Id.

According to Stockstill's oppositions, the foregoing allegations plead a federal claim under 18 U.S.C. § 1001. The Court disagrees. 18 U.S.C. § 1001 comes from a chapter of the federal criminal code that concerns criminal fraud and false statements. In other words, 18 U.S.C. § 1001 is a penal statute. But Stockstill's claims are civil, not criminal. "Criminal statutes cannot be the basis of jurisdiction in a civil case." MotJuste Tirade of Vim Andre Juste v. Brennan, 16 F. Supp. 3d 716, 725 (N.D.W. Va. 2014) (citation omitted); see also Cort v. Ash, 422 U.S. 66, 79-80 (1975) (finding no jurisdiction over civil action arising from penal statute where "there was nothing more than a bare criminal statute, with absolutely no indication that civil enforcement of any kind was

available to anyone"); <u>Moore v. New York City Bd. of Educ.</u>, 2001 WL 815510, at *2 (S.D.N.Y. July 19, 2001) ("The two fraud statutes Moore cites in his opposition brief are criminal statutes that do not provide federal jurisdiction over a civil lawsuit for money damages."). Consequently, 18 U.S.C. § 1001 does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to 28 U.S.C. § 4101, this law defines "defamation" for purposes of a judicial proceeding where a domestic federal or state court is asked to recognize or enforce a foreign judgment for defamation. But Stockstill's allegations do not concern or raise issues of a foreign judgment for defamation. Accordingly, Stockstill's reference to 28 U.S.C. § 4101 "appears to be immaterial and made solely for the purpose of obtaining jurisdiction" and is "wholly insubstantial and frivolous," <u>Williston Basin Interstate Pipeline Co.</u>, 524 F.3d 1090, 1094 (9th Cir. 2008), which in turn means that 28 U.S.C. § 4101 does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference to the Fair Housing Act of 1968, 42 U.S.C. §§ 3601 <u>et seq.</u>, the Fair Housing Act protects people from discrimination when they are renting or buying a home, getting a mortgage, seeking housing assistance, or engaging in other housing-related activities. But Stockstill's allegations do not concern or raise issues of prohibited discrimination in housing. For example, there is no allegation in the complaint that Stockstill was discriminated against with her housing due to her race, color, national origin, religion, sex, familial status, or disability. Accordingly, Stockstill's reference to the Fair Housing Act "appears to be immaterial and made solely for the purpose of obtaining jurisdiction," <u>Williston Basin Interstate Pipeline Co.</u>, 524 F.3d at 1094, which in turn means the Fair Housing Act does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to the "Plain Language Act," which possibly is a reference to the Plain Writing Act of 2010, Pub. L. No. 111-274, 124 Stat. 2861, the Court fails to find any connection between this law and Stockstill's allegations. Accordingly, Stockstill's reference to the "Plain Language Act" "appears to be immaterial and made solely for the purpose of obtaining jurisdiction" and is "wholly insubstantial and frivolous," <u>Williston Basin</u>

Interstate Pipeline Co., 524 F.3d at 1094, which in turn means the "Plain Language Act" and the Plain Writing Act do not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to 38 U.S.C. § 7316, this law applies to claims of malpractice or negligence of a health care employee of the Veterans Health Administration. But Stockstill's allegations do not concern or raise issues of the Veterans Health Administration. Accordingly, Stockstill's reference to 38 U.S.C. § 7316 "appears to be immaterial and made solely for the purpose of obtaining jurisdiction" and is "wholly insubstantial and frivolous," Williston Basin Interstate Pipeline Co., 524 F.3d at 1094, which in turn means 38 U.S.C. § 7316 does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to 41 U.S.C. § 6503, this law applies to breaches or violations of contracts made by agencies of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000. Cf. 41 U.S.C. § 6502. But Stockstill's allegations do not concern or raise issues about such contracts. Accordingly, Stockstill's reference to 41 U.S.C. § 6503 appear to be "immaterial and made solely for the purpose of obtaining jurisdiction" and is "wholly insubstantial and frivolous," Williston Basin Interstate Pipeline Co., 524 F.3d at 1094, which in turn means 41 U.S.C. § 6503 does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 eq seq., this law prohibits discrimination against people with disabilities in programs that receive federal financial assistance. Stockstill's allegations suggest that Stockstill's son, Lupe, had a disability and, as a result, was on a "504 plan" at school. Presumably, although not alleged in the complaint, Stockstill's children's schools received federal financial assistance. But Stockstill's allegations do not concern or raise issues of Lupe or Stockstill being discriminated against because of a disability. Thus, absent allegations of discrimination by a school because of a disability, Stockstill's reference to Section 504 appears to be "immaterial and made solely for the

purpose of obtaining jurisdiction," <u>Williston Basin Interstate Pipeline Co.</u>, 524 F.3d at 1094, which in turn means Section 504 does not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

As for Stockstill's reference in the complaint to claims arising under California statutes and common law, such laws clearly do not provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims.

In sum, the complaint's allegations fail to provide the Court with a basis for federal question subject-matter jurisdiction over Stockstill's claims, and Stockstill has utterly failed in her oppositions to demonstrate otherwise. Consequently, Stockstill's claims must be dismissed for lack of subject-matter jurisdiction. Stockstill's claims will be dismissed without prejudice.

**B.      Other motions and defenses are moot.**

As noted <u>supra</u>, there are other motions and defenses pending before the Court: namely, motions to dismiss Stockstill's claims for failure to comply with Rule 8(a)(2) and Rule 10(b), <u>see</u> Doc. Nos. 23, 36, 47-1, 56; motions to dismiss Stockstill's claims for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), <u>see</u> Doc. Nos. 23, 28-1, 30, 44-1, 47-1, 56, 65-1; motions to dismiss Stockstill's claims for insufficient process and insufficient service of process pursuant to Rule 12(b)(4) and Rule 12(b)(5), <u>see</u> Doc. Nos. 40-1, 44-1; motions for a more definite statement of Stockstill's claims pursuant to Rule 12(e), <u>see</u> Doc. Nos. 23, 36, 56, 65-1; a motion to strike redundant, immaterial, impertinent, and scandalous matter from Stockstill's complaint pursuant to Rule 12(f), <u>see</u> Doc. No. 23; and Stockstill's motions for entry of default and default judgment against Fresno Unified, <u>see</u> Doc. Nos. 33, 37.

Because the Court lacks subject-matter jurisdiction over Stockstill's claims, these other pending motions and defenses are moot and will be denied on that basis; the Court does not have jurisdiction to decide them. <u>See Bell v. Hood</u>, 327 U.S. 678, 682 (1946); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1350 (3d ed.) (citing cases).

/ / /

/ / /

/ / /

# **ORDER**

Accordingly, IT IS HEREBY ORDERED as follows:

1.     The defendants' motions to dismiss Stockstill's claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) are GRANTED.

2.     The other pending motions and defenses pending before the Court (identified _supra_ in § III(B)) are DENIED as moot.

3.     The hearing scheduled for Family HealthCare Network's motion to dismiss, Doc. No. 65, is VACATED as moot.

IT IS SO ORDERED.

Dated:   March 17, 2020     _____

                                                SENIOR  DISTRICT  JUDGE